Ronald J. THOMPSON, M.D., et al., Plaintiffs,

v.

MIDWEST FOUNDATION INDEPENDENT PHYSICIANS ASSOCIATION, d/b/a ChoiceCare, et al., Defendants.

No. C–1–86–744.

United States District Court, S.D. Ohio, W.D.

Sept. 4, 1987.

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, Ohio, for plaintiffs.

John E. Martindale, Gail E. Sincell and Barbara Friedman Yaksic, Benesch & Friedlander, Columbus, Ohio, for defendants.

## ORDER

HERMAN JACOB WEBER, District Judge.

### CLASS CERTIFICATION

This matter is before the Court upon plaintiffs' Motion to Certify this Case as a Class Action (doc. no. 27).

Initially, a crucial distinction must be emphasized between this Court's consideration of the facts and law with regard to the issue of class certification and the facts and law involved with the adjudication of the merits of plaintiffs' claims. This Court is concerned with the former only, and looks to Rule 23 of the Federal Rules of Civil Procedure for legal guidance and authority.

Defendants spend much time and many pages diverting the Court's attention to the countless variations among the members of the proposed class and to the inescapable individualized nature of the merits of plaintiffs' claims, particularly as to plaintiffs' state claims. While defendants articulate at length their reasoning why this Court *should not* certify this case as a class action, defendants have not demonstrated why this Court *cannot* certify this as a class action on the federal claims.

The focus in this case must be directed at, and fixed on, the issue and nature of defendants' liability, if any, and their course of conduct as it uniformly affected all plaintiffs. Rule 23 mandates that the proposed class members and representatives meet specified requisites before class certification is appropriate, but beyond the establishment and satisfaction of those prerequisites, the Court is not constricted solely to an examination of the class members in determining a common basis which would justify class certification. Very rarely, if ever, will a class be proposed to any court with the similarity and simplicity which defendants advance as legally necessary. To require such would render Rule 23 inoperable.

To make the class action a meaningful judicial vehicle, we must concentrate on the facts at the core of the dispute and determine the common legal and factual basis, if any, of the controversy without addressing the merits.

The Court has given serious consideration to the claims and defenses of the parties and their susceptibility to resolution on a classwide basis. The fact that individual claims and issues are interwoven in the eventual resolution of this matter, however, cannot automatically prevent class certification and does not automatically defeat the purpose of Rule 23. Further, class certification may be conditional and the Court retains this discretionary tool to decertify the class at any time if justice so requires.

Based upon the foregoing, the Court discards all unnecessary and improper discussion of the merits of plaintiffs' claims as that remains solely in the province of the triers of fact after all evidence has been presented. The class certification issue is the issue before the Court and that decision is left to the sound discretion of the trial judge who bears the responsibility to manage the litigation.

Accordingly, pursuant to two days of hearings, and upon consideration of the testimony, exhibits, briefs and arguments of counsel, and pursuant to Rule 23, the Court makes the following findings of fact and conclusions of law on the issue of class certification of plaintiffs' claims against defendants:

## FINDINGS OF FACT

(1) Plaintiffs are physicians who have been or currently are under contract through a physician provider agreement ("Provider Agreement") with defendant Midwest Foundation Independent Physicians Association, d/b/a ChoiceCare ("ChoiceCare"); in addition, some of the plaintiffs are shareholders of defendant ChoiceCare Corporation ("Corporation"). All of the named plaintiffs reside in the Greater Cincinnati area.

(2) Defendant ChoiceCare is a health maintenance organization ("HMO") founded in 1978 by physicians in the Greater Cincinnati area and was controlled and operated by physicians with the support and sponsorship of the Cincinnati Academy of Medicine.

(3) Defendant Corporation is a for-profit Delaware Corporation formed for the purpose of purchasing the assets of the not-for-profit ChoiceCare through a wholly-owned subsidiary, ChoiceCare, Inc. The Corporation was also incorporated to act as a holding company for other proposed business ventures.

(4) Defendant Stephen P. Hogg, M.D., is President of ChoiceCare and Chairman of the Board and Senior Executive Officer of the Corporation.

(5) Defendant Kerry P. Tarvin is the Executive Director of ChoiceCare and President, Director, and Chief Executive Officer of the Corporation.

(6) Plaintiffs' First Amended Class Action Complaint and Jury Demand ("Amended Complaint") was filed on behalf of the physicians who are or were providers to ChoiceCare and on behalf of those who have purchased any shares of Corporation stock pursuant to an Offering Circular dated February 15, 1985. The Amended Complaint contains 14 counts: four counts state federal causes of action; 10 counts allege violations of state law. Defendants' Amended Answer contains four amended counterclaims: one count states a federal claim; three counts allege violations of state law.

(7) The proposed class representatives, John A. Brunsman, John J. Jaeger, Richard T. Marnell, Ronald J. Thompson, Paul F. Grote and S. George Lesinski are physicians who entered into ChoiceCare Provider Agreements prior to the time this suit was filed. Each claims injury by reason of the activity of defendants. Dr. Brunsman is currently a ChoiceCare providing physician.

(8) Paul F. Grote and S. George Lesinski are physicians who purchased shares of stock in the Corporation pursuant to the 1985 Offering Circular. (Ex. A, Def. Brief in Opposition to Plaintiffs' Motion to Certify as Class Action; Ex. III, Def. Class Certification Hearing Exhibits).

(9) Plaintiffs express little complaint during the years that ChoiceCare operated as a non-profit organization. Only after plaintiffs perceived that the HMO might cease to be a charitable endeavor did they raise their federal claims and the issues herein. The conduct of defendants Hogg and Tarvin which promoted the Corporation, and ChoiceCare's agreement to transfer the assets and liabilities to the Corporation constitute the real basis of the parties' dispute. The Trustees on the Board of ChoiceCare are not defendants in this case.

(10) The parties have stressed the importance of the prompt resolution of this matter and have pressed this Court for an accelerated schedule and expeditious consideration of the issues.

### A. 23(a)(1): Numerosity

(11) The proposed class consists of the physicians who have, at any time, entered into a physician Provider Agreement with ChoiceCare.

(12) The proposed subclass consists of the physicians in the class who purchased shares in the Corporation pursuant to the February 15, 1985 Offering Circular.

### B. *23(a)(2): Common Questions of Law and Fact*

(13) Plaintiffs' Amended Complaint is based on the following primary factual and legal issues common to all plaintiffs with regard to their federal claims: 1) whether defendants engaged in per se illegal price fixing and other conspiracies in restraint of trade, 2) whether defendants engaged in monopolization, attempted monopolization, or a conspiracy to monopolize the relevant market, 3) whether defendants engaged in a pattern of racketeering activity proscribed by federal law, including violations of federal securities laws, wire fraud, and mail fraud, and whether defendants have used proceeds from these activities to further their unlawful conduct.

(14) In addition to the common issues set out in the preceding paragraph, plaintiffs' Amended Complaint presents a separate factual and legal issue which is common to the plaintiffs who own Corporation stock with regard to their federal securities claim: whether defendants violated federal securities laws by making untrue statements of material fact, omitting statements of material fact, or engaging in a fraudulent course of business in connection with an offering of stock in the Corporation.

(15) The state claims in plaintiffs' Amended Complaint do not set forth factual or legal issues which are common to the members of the proposed class or subclass. As opposed to our analysis of the common legal and factual basis of liability under federal law, an analysis of the basis of liability under state law clearly instructs that resolution of the state claims demands countless individualized questions for each plaintiff.

### C. *23(a)(3): Typicality*

(16) Defendants' conduct as it relates to plaintiffs' federal claims affected the proposed class representative physicians in the same manner as it affected the class of plaintiffs they represent. The individual speciality or area of practice of a plaintiff does not bear upon that physician's federal claims against the defendants; the injuries allegedly sustained by the proposed class representatives based on their federal claims are common to those sustained by the plaintiffs. Defendants' policies and practices with regard to the federal claims were conducted on a classwide basis and defendants did not treat one group or category of physicians differently than any other group or category with respect to the federal allegations contained in plaintiffs' Amended Complaint.

(17) The representations made by defendants in the physician Provider Agreements and physician newsletters were uniform and distributed to all plaintiffs.

(18) Information concerning defendant Corporation's sale of stock was contained in a ChoiceCare Offering Circular dated February 15, 1985 and was available to all plaintiffs.

(19) Defendants' conduct as it relates to plaintiffs' state claims did not affect the proposed class representative physicians in the same manner as it affected the class of plaintiffs they represent. As opposed to the basis of liability under federal law, defendants' liability under state law depends on separate determinations of distinctive facts which vary between the proposed representatives and the class of plaintiffs they represent, and depends upon the individual application of state law to those nonuniform situations which reach as far back in time as 1978.

(20) The proposed class representatives' knowledge and experience with regard to the state issues presented in this case are varied and are not convincingly characteristic of the knowledge and experience of the class of plaintiffs they represent. The factual premises of the state claims dictates an individual analysis which militates against typicality of any nature as to those claims.

### D. *23(a)(4): Adequacy of Representation*

(21) Each proposed class representative is a current or former ChoiceCare provider/physician. These representatives have shown that they are knowledgeable about the facts which are key to the federal issues presented in this case.

(22) Each proposed class representative has testified, at the hearing or during deposition, that he understands the fiduciary duty that he owes all plaintiffs in protecting their federal rights and that he has the ability and intention to honor that duty.

(23) The interests of the plaintiffs in asserting and protecting their rights under the multiple state law theories advanced in their Amended Complaint are diverse, and the proposed class representatives have not demonstrated an understanding of those various interests or the ability or intention to protect those many interests.

(24) The proposed class representatives have submitted a Proposed Expense Budget setting forth their financial responsibilities and obligations, including all costs and expenses of trial. This budget has been signed by all proposed class representatives and each has acknowledged his financial responsibility to pay all costs and expenses if necessary.

(25) The proposed class representatives have made a significant time and financial commitment to this litigation, have raised a substantial fund, and are continuing to accumulate necessary reserves; these representatives have also provided counsel with thousands of pages of material and documents.

(26) Both firms representing plaintiffs have experience in class action litigation and have demonstrated a working knowledge of the factual details and legal principles involved in this case.

## F. *23(b)(3)*

(27) Plaintiffs' federal claims all arise from the same nucleus of operative facts and from a common course of conduct of defendants. While several individual issues remain to be resolved on the merits, the classwide federal issues of liability predominate and a class action is superior to any other method of resolving the controversy presented by plaintiffs' federal claims. For the same reasons, the management of this suit as a class action as to those claims will be less difficult and a better use of judicial resources than would

separate and repetitive adjudications of those claims under the theory of joinder.

## CONCLUSIONS OF LAW

(28) The legal standard for class certification is set forth in Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) requires the Court to find the following prerequisites for class certification: 1) that the class is so numerous that joinder of all members is impracticable, 2) that there are questions of law or fact common to the class, 3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) that the representative parties will fairly and adequately protect the interests of the class.

(29) In addition to meeting the prerequisites set forth in Rule 23(a), the Court must satisfy the prerequisites in a subsection of Rule 23(b). Having considered the arguments made with regard to subsections (b)(1) and (b)(2), the Court finds that (b)(3) is the only applicable subsection to this case. Rule 23(b)(3) requires the Court to find that the common class questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(30) Both the proposed class and subclass are accurately and clearly defined and, under the circumstances of this case, the size of each renders joinder impracticable with regard to plaintiffs' federal claims.

(31) Plaintiffs' federal causes of action arise from a common course of conduct of defendants and are based on comparable legal theories. There is a common legal and factual basis of liability in plaintiffs' allegations of violations of federal law. Plaintiffs' federal claims pose questions of law and fact which are common among the members of the class and which are common among the members of the subclass.

(32) Plaintiffs' state causes of action arise from varied fact situations and are based on multiple legal theories. While some state claims of some plaintiffs are

factually and legally similar, they are not common to those of other plaintiffs. Resolution of the state claims demands separate individualized examinations of specific facts and distinct applications of state law. There is no common legal or factual basis of liability in plaintiffs' allegations of violations of state law.

(33) Resolution of plaintiffs' federal claims does not depend upon the resolution of any of plaintiffs' state claims. While the basis of plaintiffs' federal and state claims may overlap on some points of fact and law, the federal issues can proceed on the merits independently of any merit consideration of the state issues. Specifically, plaintiffs' federal RICO and securities allegations trigger a broad scope of factual and legal considerations which cover the significant issues in dispute. A close examination of plaintiffs' state fraud claims reflects that while they are related in some aspects to plaintiffs' federal claims, they are based upon plaintiffs' contract dispute with defendant ChoiceCare.

(34) The federal claims asserted by the proposed class representatives are typical of those asserted by the members of the classes they represent. The proposed class representatives rely upon the same basis of liability and the same legal theories under federal law as are relied upon by the members of the class they represent.

(35) The state claims of the proposed class representatives are not typical of those of the members of the classes they represent. The basis of liability under state law depends on factual situations and legal theories which are unique to certain representatives or select members of their class and which span the time from 1978 to present.

(36) The proposed class representatives will fairly and adequately protect the interests and rights of the classes they represent under the federal law and have demonstrated the ability and intention to do so.

(37) The proposed class representatives cannot adequately protect the interests and rights of the classes they represent under the state law as they have not convincingly demonstrated the ability or intention to do so.

(38) The federal questions of law and fact which are common to the plaintiffs in this case predominate over the individual questions. Proceeding with a class action on plaintiffs' federal claims is superior to all other available methods for the fair and efficient adjudication of this controversy. Under the circumstances of this case, the management of this suit as a class action on the federal issues will be less difficult and a better use of judicial resources than would separate and repetitive adjudications of plaintiffs' claims in an alternative manner.

(39) Based upon the foregoing, the Court concludes that class certification is proper as to plaintiffs' federal claims contained in Counts IX, X, XI, and XII of their Amended Complaint, and finds that such certification is inappropriate and unmanageable as to plaintiffs' state law claims contained in the remaining 10 counts of the Amended Complaint.

### JURISDICTION OF PENDENT STATE CLAIMS

The Court having ruled that class certification is proper in this case as to plaintiffs' federal claims, and having found that such class certification is inappropriate and unmanageable as to plaintiffs' state law claims, it now addresses the issue of its subject matter jurisdiction as to those pendent state claims.

A brief summary of the posture of this case is helpful in our analysis:

The initial 14–count Class Action Complaint in this case was filed on August 15, 1986 and was amended with a 14–count Complaint containing 103 paragraphs on September 5, 1986; defendants filed their Answer with Amended Counterclaims on October 3, 1986.

As of the date of this Order, more than 110 documents have been filed with the Court; 11 Motions and Cross-Motions for Summary Judgment, and 12 other sundry motions are outstanding; and several hours of hearings and days of conferences

have been held either in person or by telephone.

With regard to the class certification issue, this Court heard evidence for two full days, considered three binders containing hundreds of exhibits, and received Proposed Findings of Fact and Conclusions of Law totalling over 100 pages. Defendants' main contention in arguing against class certification in this case is that the highly individualized issues involved in the state claims make the classwide resolution of those claims both difficult and unmanageable. We have agreed.

Each party has repetitively urged this Court to expedite the management and consideration of this case, and each has expressed a serious concern that the rights of their parties can only be protected by speedy and definitive determinations. It has also been argued that the rights and interests of all health care providers and patients in this community are hinged upon the outcome of this litigation.

In accordance with those concerns, and with the help of the parties, the class certification issue was submitted to the Court on June 12, 1987 and the trial was set in October, 1987 and continued to November 16, 1987. Of the 14 counts in plaintiffs' Amended Complaint, only four state federal causes of action; of the four counts in defendants' counterclaims, only one states a federal cause of action; of the 11 Motions and Cross-Motions for Summary Judgment, only two involve a federal claim. Most significantly, the federal claims contained in counts IX, X, XI and XII involve complex, inextricably intertwined federal issues alleging antitrust, securities, and RICO violations.

The parties' most recent dispute involves the submission of the witness lists which, to the dismay of the opposition, name more than several hundred potential witnesses. This is representative of the problems which have already emerged and of those which still lurk just beneath the surface. In responding to defendants' Motion for Sanctions with regard to the witness list, plaintiffs remind the Court that "[t]he pending litigation involves a multitude of factual and legal issues. Plaintiffs are in the process of undertaking extensive discovery to narrow and simplify the focus of the litigation."

The time is now ripe for the Court to take affirmative steps to narrow and simplify the focus of this litigation. It is of deep concern to this Court that the federal rights of all parties are either unduly burdened or completely lost in our struggle to adjudicate the state claims in this case.

The basis for this Court's jurisdiction arises from plaintiffs' claims of violations of 1) the federal antitrust laws regarding restraint of trade, 15 U.S.C. § 1, 2) the federal antitrust laws regarding monopolization, 15 U.S.C. § 2, 3) Section 10b of the 1934 Securities Act, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities Exchange Commission, and 4) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Since diversity is absent in this case, the 10 additional state claims are brought to this Court on the theory of pendent jurisdiction.

■■■ The doctrine of pendent jurisdiction is one of discretion and not of plaintiffs' right. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Unnecessary decisions of state law should be avoided by the federal courts as a matter of comity, to promote justice between the parties, and to ensure fairness to all litigants. *Id.*

The exercise of judicial economy in the federal district courts is of paramount importance. The Congress of the United States of America wisely provided limits upon federal court jurisdiction and the federal district court must be extremely careful to be ever mindful of the priorities as defined by Congress and by the Constitution of the United States. The federal court has been ordered to give criminal cases first priority, then to attend to temporary restraining orders and preliminary injunctions, and next to protect and enforce the federal civil rights of all persons as embodied in the Declaration of Independence, the Federal Constitution and the various federal statutes. It is essential

that this Court render swift and sure justice so that violations of these federally protected rights will be redressed and eliminated from our society with all deliberate speed.

Every day of trial this Court can save, even every hour of trial it can save in one case permits the Court to hear the claim of another litigant. This is of extreme importance and it is the essence of judicial economy. This Court does not do justice for the people of the United States by conducting a trial for months when the federal claims alone could be resolved in a matter of weeks. It is imperative that the energies of this Court be focused on enforcing the Constitution and statutes of the United States rather than determining state law disputes, particularly between citizens of the same state.

■ The fact that this Court has the discretionary power to decide questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is, in effect, only a state law case; where the state claims constitute the real body of a case, to which the federal claims are only appendages, the state claims may fairly be dismissed. *Id.* at 727, 86 S.Ct. at 1139.

■ If the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedies sought, state claims may be dismissed without prejudice and left for resolution to state tribunals. *Id.* at 726, 86 S.Ct. at 1139.

■ The state claims in this case interfere with the resolution of and unduly burden the federal claims. The legal theories, issues and remedies involved in the 10 state claims are separate and distinct from those involved in the four federal claims. The likelihood of jury confusion in presenting evidence and arguing these divergent legal theories justifies the separation of the state and federal claims and the decision not to extend jurisdiction to those pendent state claims. *Id.* at 727, 86 S.Ct. at 1139; Rule 23(d). The time and evidence necessary to prove the state claims substantially outweigh that necessary to prove the federal claims. Significantly, that trial time which is required to try these state claims detracts from the trial time available to hear the claims of other equally worthy litigants.

Additionally, the state claims will substantially increase the expense of this already costly litigation. Further, all relevant discovery obtained in the federal case will be available for a later trial in state court, if necessary.

This Court will not deny equally deserving federal litigants their day in court in order to hear state claims of citizens of the same state even though these particular plaintiffs may be required to file an additional lawsuit in the appropriate state court.

This Court cannot promote or accomplish the intent and purpose of the statutes passed by the Congress of the United States when the state law claims in this and other cases dilute this Court's time and primary responsibilities. In this Court's view, we do injustice to the parties, to the public, and to our system of justice by exercising pendent jurisdiction in most cases.

Upon focusing on the federal claims of plaintiffs' Complaint, it is clear to the Court that the legal theories, proof, and facts involved are complex and demand and deserve close attention and concentration. Based upon the procedural burdens illustrated in this Order, which are underlined by the feasibility of proceeding with a class action on only four of plaintiffs' 14 claims, the Court finds that the best means of resolving the federal issues is to direct its judicial resources solely to the four federal counts in plaintiffs' Complaint. The Court reiterates that none of the state claims is essential to administering justice and granting relief as to the federal claims in this case. This Court is firm in its belief that the appropriate state court is entirely competent to protect the rights of all parties with regard to those state law claims.

It is essential to the administration of justice that a court exercise its discretion in a consistent manner and, therefore, finding

no clearly articulable reason to make an exception to this Court's previous rulings, jurisdiction will not be extended to the state law claims in this case. *Goff v. Kroger Co.,* 647 F.Supp. 87 (S.D.Ohio 1986); *Foltzer v. Lodge & Shipley,* 636 F.Supp. 843 (S.D.Ohio 1986). To rule otherwise would be unjust to the litigants who practice in this Court.

### ORDER

Based upon the foregoing, in the exercise of discretion and in an attempt to make this forum available to enforce the federal rights of all people who petition it, the Court hereby: 1) CONDITIONALLY CERTIFIES the class of plaintiffs consisting of all physicians who have at any time entered into a Provider Agreement with ChoiceCare as to the federal claims (Counts IX, X, XI and XII) in the Amended Complaint pursuant to Fed.R.Civ.P. 23(b)(3); 2) CONDITIONALLY CERTIFIES the subclass of plaintiffs consisting of all physicians who have purchased any shares of Corporation stock pursuant to the Offering Circular dated February 15, 1985 as to the federal claims (Counts IX, X, XI and XII) in the Amended Complaint pursuant to Fed.R. Civ.P. 23(b)(3); 3) DENIES class certification on all pendent state claims (Counts I–VIII, XIII and XIV) in the Amended Complaint; and 4) DISMISSES INVOLUNTARILY WITHOUT PREJUDICE for lack of subject matter jurisdiction all state law claims.

Further, pursuant to Rule 23(c), a Notice shall be sent to all class members in the following manner:

1) Plaintiffs shall be responsible to send by regular U.S. Mail the Notice to all members, and defendants are ordered to make available any information which would aid plaintiffs in effectuating the best notice practicable including the latest addresses available from any of their business records.

2) Plaintiffs shall publish the Notice as a public notice in the Hamilton County Court Index and two other newspapers of general circulation in the Greater Cincinnati area daily for two consecutive weeks commencing on September 21, 1987.

3) Plaintiffs shall open a U.S. Post Office Box in the United States Post Office and Courthouse, Cincinnati, Ohio, for the purpose of receiving the responses to the Notice and shall deliver the Post Office Box key to the Clerk of this Court within seven days of the date of this Order.

4) Upon receipt of the Post Office Box key, the Court will finalize and file the Notice and copies shall be sent to counsel.

5) The Clerk of Courts shall be solely responsible to collect the responses and to maintain a current list of responses, a copy of which shall be made available to the parties after 12:00 o'clock noon on October 26, 1987.

A copy of the Notice the Court intends to submit is attached hereto as Exhibit A. All parties are DIRECTED to inform the Court of any objections or modifications to the form or content of the Notice within seven days of the date of this Order. The Court shall consider the matter and file the finalized Notice on September 14, 1987. The class members shall have until October 23, 1987, inclusive, to respond.

IT IS SO ORDERED.

### IMPORTANT NOTICE

To: ALL PHYSICIANS WHO (1) HAVE AT ANY TIME ENTERED INTO A PROVIDER AGREEMENT WITH THE MIDWEST FOUNDATION INDEPENDENT PHYSICIANS ASSOCIATION d/b/a CHOICECARE OR (2) HAVE PURCHASED ANY SHARES OF CHOICECARE CORPORATION STOCK PURSUANT TO AN OFFERING CIRCULAR DATED FEBRUARY 15, 1985.

This Notice is given to you pursuant to an Order of the United States District Court for the Southern District of Ohio, Western Division and Rule 23(c)(2) of the Federal Rules of Civil Procedure. It is to inform you of the pendency of a class action, and of how to request exclusion from the class if you do not wish to be a class member. None of the claims alleged in

plaintiffs' First Amended Class Action Complaint have been proven.

1) There is now pending in the United States District Court for the Southern District of Ohio, claims brought by certain physicians on behalf of themselves and two classes of physicians: a) those physicians who have at any time entered into a physician Provider Agreement with the Midwest Foundation Independent Physicians Association d/b/a ChoiceCare, and b) those physicians who have purchased shares of ChoiceCare Corporation pursuant to an offering circular dated February 15, 1985.

2) Plaintiffs claim that they have been damaged by the actions of defendants which allegedly include: illegal price fixing and other conspiracies in restraint of trade, monopolization and conspiracy to monopolize the relevant market, racketeering activity which includes violations of securities law, wire fraud and mail fraud and from which proceeds were used to further unlawful conduct, and violations of federal securities laws based upon the offering of stock in defendant Corporation.

3) The defendants are Midwest Foundation Independent Physicians Association d/b/a ChoiceCare, ChoiceCare Corporation, Stephen P. Hogg, M.D. and Kerry D. Tarvin. Defendants have denied any liability. Further, ChoiceCare and ChoiceCare Corporation have filed a counterclaim against plaintiffs which claims that the actions of plaintiffs: violate the federal antitrust laws, interfere with contractual and business relationships, constitute a breach of contract and constitute defamation. ChoiceCare and ChoiceCare Corporation are seeking both compensatory and treble damages from plaintiffs. The Court has not dismissed the counterclaims or any damages which may result therefrom. In addition, defendants have raised certain affirmative defenses to plaintiffs' claims.

4) The Court has certified a class action in this proceeding under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The plaintiff class consists of two classes. The first is all those physicians who have at any time entered into a physician Provider Agreement with ChoiceCare. The second is all those physicians who have purchased ChoiceCare Corporation stock pursuant to an offering circular dated February 15, 1985. The Court may reconsider this decision, by decertifying, modifying the definition of the class, or creating subclasses in the light of future developments in the case. The definition does not imply a conclusion that anyone within the class was damaged as a result of the actions of the defendants.

5) Trial will commence before Judge Herman J. Weber of the United States District Court for the Southern District of Ohio, and a jury on November 16, 1987, or as otherwise ordered by this Court.

6) If you are a member of either of the above-described classes, you will be deemed a party to this action for all purposes unless you request exclusion from the class action.

7) If you do not request exclusion from the class by October 23, 1987, you will be considered one of the plaintiffs of this class action for all purposes. You may enter an appearance through counsel of your own choice. You will be represented by counsel for the class representatives unless you choose to enter an appearance through your own legal counsel.

8) Class members who do not request exclusion will receive the benefit of, and will be bound by, any settlement or judgment favorable to the class. The class representatives' attorneys fees and costs will be paid out of any recovery of compensatory and other damages obtained by the class members. You will not be charged with costs or expenses whether or not you remain a member of the class aside from damages, if any, resulting from judgment on the counterclaims. If you choose to enter an appearance through your own legal counsel, however, you will be liable for the legal fees of your personal counsel.

9) Class members who do not request exclusion will be bound by any judgment adverse to the class, and will not have the right to maintain a separate action even if they have already filed their action.

10) If you wish to remain a member of the class, you need do nothing at this stage of the proceedings.

11) If you wish to be excluded from the class, you must submit a written request for exclusion. For your convenience, the request for exclusion may be submitted on the attached form, entitled "Request for Exclusion." If you received this notice by mail, a Request for Exclusion form should have accompanied it. If you did not receive a Request for Exclusion form, you may obtain a copy by writing to the Clerk of Court, P.O. Box ____, Cincinnati, Ohio 45201. A written Request for Exclusion may be submitted without using the Request for Exclusion form, but it must refer to the litigation as *Ronald J. Thompson, M.D., et al. v. Midwest Foundation Independent Physicians Association d/b/a ChoiceCare, et al.,* No. C–1–86–744; include your name and address, and the name and address of your chosen counsel if you do not choose class counsel, in your statement requesting exclusion. Any request for exclusion must be received on or before October 23, 1987 by the clerk of the United States District Court for the Southern District of Ohio at P.O. Box ____, Cincinnati, Ohio 45201.

12) The plaintiffs in this class action are represented by two firms which have been approved as class counsel. They are:

Stanley M. Chesley, Esq.

WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.
1513 Central Trust Tower
Cincinnati, Ohio 45202
513–621–0267

James R. Cummins, Esq.
BROWN, CUMMINS & BROWN CO., L.P.A.
3500 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202
513–381–2121

13) The approved class representatives in this class action are:

John A. Brunsman
11325 Springfield Pike
Cincinnati, Ohio 45246

S. George Lesinski
629 Oak St., Suite 201
Cincinnati, Ohio 45206

Paul Grote
7320–A Kingsgate Way
West Chester, Ohio 45069

Richard T. Marnell
3333 Vine Street
Cincinnati, Ohio 45220

John J. Jaeger
629 Oak Street
Cincinnati, Ohio 45206

Ronald J. Thompson
4452 Eastgate Boulevard
Cincinnati, Ohio 45242

14) *Examination of pleadings and papers.* This notice is not all inclusive. References to pleadings and other papers and proceedings are only summaries. For full details concerning the class action and the claims and defenses which have been asserted by the parties, you or your counsel may review the pleadings and other papers filed at the office of the Clerk of the United States District Court for the Southern District of Ohio, Room 324, U.S.P.O. & Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202, on any business day from 9:00 A.M. to 5:00 P.M.

15) *Interpretation of this Notice.* Except as indicated in the orders and decisions of the United States District Court for the Southern District of Ohio, Western Division, no court has yet ruled on the merits of any of the claims or defenses asserted by the parties in this class action. This notice is not an expression of an opinion by the Court as to the merits of any claims or defenses. This notice is being sent to you solely to inform you of the nature of the litigation, your rights and obligations as a class member, the steps required to be excluded from the class, the Court's certification of the class, and the forthcoming trial.

Daniel J. Lyons, Jr.
Deputy Clerk
United States District Court for the Southern District of Ohio, Western Division

Dated: _____

EXCLUSION REQUEST FORM

Clerk
United States District Court for the
Southern District of Ohio, Western Division
P.O. Box ___
Cincinnati, Ohio 45201

Re: Ronald J. Thompson, M.D., et al.
v.
Midwest Foundation Independent
Physicians' Association d/b/a
ChoiceCare, et al.

No. C–1–86–744

I hereby request to be excluded from the class action in the above captioned matter.

_____
(Signature)

_____
Name (Print)

_____
Address

_____

_____
Name of Chosen Counsel

_____
Address